STATE of Missouri, Respondent,

v.

Freddie HUDDLESTON, Appellant.

No. 55760.

Supreme Court of Missouri,
Division No. 1.

Feb. 8, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Albert L. Felberbaum, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of stealing from a person. See §§ 560.156 and 560.161.[1] The substitute information also charged a prior felony conviction under the provisions of § 556.280. The jury found defendant guilty of the offense charged and the court fixed his punishment at imprisonment for a term of four years. Defendant has appealed.

William Gilmore was jointly tried with defendant and was also convicted but he did not appeal. The appellant will be referred to in this opinion as the defendant.

Since defendant does not question the fact that the State made a submissible case a brief statement of facts will suffice. Shortly after midnight on October 15, 1969, Lyle Newkirk was driving alone in his automobile on Washington Avenue in St. Louis, Missouri. As he slowed down to a stop at the intersection of Taylor and Washington a girl signaled to him and asked if he would escort her to her door because she was afraid of two boys who were following her. He parked his car and proceeded to accompany her. He testified that as they neared the entrance of a

1. All statutory references are to RSMo 1969, V.A.M.S.

nearby building two young men got behind him and forced him to enter the building; that the group entered a room on the first floor where there were four men; that he wanted to leave but the woman demanded his money and he gave her $11.00. The girl and two of the men then left the room and another girl, accompanied by a man, came in. He again attempted to leave but the second woman asked for his watch and wedding ring, stating "you better cooperate or I will turn these boys loose on you"; that he then gave her the watch and ring and was permitted to leave; that he then drove to a nearby filling station and telephoned the police, and that a few minutes later he returned to the building with Officer Archie Jackson; that there were five people whom Officer Jackson lined up against the wall and he identified three of them. They were arrested and taken to the police station. He further stated that the girl who had taken his watch and ring was, in fact, a man and was dressed in men's clothing at the time he returned to the building. This witness, during the trial, identified the defendant Gilmore, also a man, as the person who stopped him at the intersection, and defendant Huddleston as the person who took his watch and ring.

Archie Jackson testified that he is a police officer; that after meeting Newkirk on the occasion in question they went to Apartment 54 of the Ford Hotel where defendant Huddleston answered the door; that defendant Gilmore was there and was dressed as a woman; that Newkirk identified three of the five persons in the room, including the two defendants. He stated that he was of the opinion that Gilmore was actually a man and this was verified at the police station when Gilmore was required to undress; that he had on a blue mini-skirt suit, a brassiere with two rubber balloons in it, and various other articles of women's clothing.

■ The first point briefed by defendant is that the court erred in overruling his oral motion to declare a mistrial and discharge the jury because the State had used its peremptory challenges in striking from the panel the four Negroes thereon so that all of the members of the trial jury were of the Caucasian race. Defendants were Negroes. The transcript discloses that there were originally six Negroes on the venire but two were excused for cause and, as indicated, four were eliminated by the State's use of peremptory challenges. No authority is cited in support of the contention and defendant's entire argument on this point is "that the State deliberately struck four black jurors from the panel leaving only white jurors remaining so that in effect defendant had no choice as between the races." We are mindful that a somewhat similar contention was considered and ruled adversely to the petitioner (defendant) in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759. In Swain the court indicated that it might be possible to successfully restrict the State's manner of using its peremptory challenges if it were shown that "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries * * *." 380 U.S. 223, 85 S. Ct. 837. In State v. Davison, Mo.Sup., 457 S.W.2d 674, this court also considered a point somewhat similar to that now before us and ruled it adversely to defendant. Neither Swain nor Davison, nor any other case we have seen, support defendant's contention under the facts here shown and we therefore rule the point against defendant.

■ The State offered and the court admitted in evidence a photograph of Gilmore dressed in the women's clothing he was wearing on the night in question and also admitted were the various items of such clothing. Defendant contends that the court erred in that regard because

those exhibits were inflammatory and prejudiced the jury against him. This contention is without merit. A very important element in the commission of this offense was the fact that the two male defendants wore women's clothing at the time of the occurrence. The facts in that regard were detailed in the oral testimony. Obviously the picture so showing, and the items worn, were relevant and admissible. Defendant does not actually contend to the contrary but says they should have been excluded because they prejudiced the jury against him. Of course, the object of most of the evidence offered by the State in a criminal case is to convict the defendant and, in that sense, all such evidence is prejudicial to him. Obviously, however, that is not the type of prejudice of which a defendant may complain. There is nothing gruesome, repulsive, or inflammatory in these items of evidence. They simply tended to show in a demonstrative way the manner in which the alleged crime was committed and to identify defendant Gilmore as a participant therein. As indicated, the point is disallowed.

■ The final point briefed by defendant is that the court erred in failing to sustain his motions for a mistrial because certain statements of the prosecutor during the argument constituted a comment upon his failure to testify. The statements which form the basis for this contention are as follows: "[Mr. Kitchin] When I closed at lunch, his [defendant's] turn then. Nothing. Mr. Felberbaum: Your Honor, please, I ask for a mistrial at this time. The Court: Overruled. * * * Mr. Kitchen (continuing): In any event, the defendants didn't have a defense. Counsel had no evidence at all. * * * You heard no evidence put on by this counsel here. Mr. Felberbaum: Again, Your Honor, I object to that and ask for a mistrial. Absolutely repetition. The Court: Overruled. Proceed. Mr. Kitchin

(continuing): Then the only evidence you have has come from him [Newkirk]. * * * Was there a crime committed here; and did these two men participate in it? * * * You have no other evidence but that they did."

Section 546.270 provides that "[i]f the accused shall not avail himself or herself of his or her right to testify * * * it shall not be * * * referred to by any attorney in the case * * *." The cases cited by defendant do not support his contention that the court erred in failing to declare a mistrial. We have held in many cases that statements such as those here complained of do not violate the quoted statute. See State v. Caffey, Mo.Sup., 404 S.W.2d 171, and State v. Hodge, Mo.Sup., 399 S.W.2d 65. In State v. Hutchinson, Mo.Sup., 458 S.W.2d 553, at page 556, we said: "The argument in this case did not contain direct and certain reference to failure of appellant to testify. In a fact situation such as here presented, the scope of appellate review of the action of the trial court with reference to objections to the argument made is as stated in State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588: 'Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant.'"

We rule that the trial court did not abuse its discretion in this case in failing to declare a mistrial and hence no reversible error occurred.

The judgment is affirmed.

SEILER, P. J., concurs.

BARDGETT, J., concurs in result.