Tommy Lawrence **DICKERSON**,
Movant-Appellant,

v.

**STATE of Missouri, Respondent.**

No. 55292.

Supreme Court of Missouri,
Division No. 2.

April 12, 1971.

Motion for Rehearing or Transfer to Court
En Banc Denied May 10, 1971.

L. Michael Lorch, Piedmont, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

Tommy Lawrence Dickerson, aged 53 years, admits to six prior felony convictions, all on pleas of guilty, and since age 20 to having spent 21 years in prison. On February 25, 1965, in the Circuit Court of Wayne County, he entered a plea of guilty to a charge of burglary and stealing and was sentenced to ten years' imprisonment for the burglary and two years' imprisonment for stealing, the sentences to run con-

1

currently. In January 1969 he instituted this 27.26 proceeding to set aside the latter judgments and sentences alleging a number of grounds most of which involve a claim of ineffective counsel, an involuntary plea of guilty and finally an assertion of not guilty of the burglary and upon the trial of this proceeding a charge of erroneous exclusion of evidence. In all these connections the appellant invokes the great constitutional issues recently articulated in both the state and federal courts. It is not necessary to a disposition of this appeal to list and consider these landmark decisions. It is sufficient to say that three of his points have to do with lack of counsel at and prior to his preliminary, ineffective counsel upon his plea of guilty in that, allegedly, counsel did not request a continuance, did not "adequately prepare for trial," failed to subpoena witnesses and participated in or condoned an involuntary plea of guilty. In all these respects he now contends that upon his 27.26 hearing he sustained his burden of proving all these charges and claims.

As to the theft of the two saddles Dickerson has filed his own affidavit in which he states that if his witness, the well-known Virgil L. Turley (State v. Turley, Mo., 442 S.W.2d 75; State v. Turley, Mo., 452 S.W.2d 65) an inmate of the penitentiary from Jasper County, were present he would testify that he gave Dickerson the two saddles, near Poplar Bluff, to deliver to a friend in Potosi. The appellant testified at length as to numerous matters, as to some questions on cross-examination he took refuge in the Fifth Amendment and refused to answer. In any event he testified that he was arrested by deceased sheriff "Boob" Chatman in connection with the burglary of a church (appellant professed to having become a preacher) but as to the charge of burglary of the Beckers' barn and the theft of two saddles he said that the sheriff "backhanded" him, threatened him with life imprisonment and failed to advise him of his rights, particularly to counsel. The sheriff and Patrolman Wright took him to Poplar Bluff to see his

brother and to locate the spot at which he was given the saddles. Other state patrol officers appeared and he says that a "rookie cop," a highway patrolman, tried "to make me cop out" by "beating me up in the leg and punching me in the ribs." He admits that he had a preliminary hearing but says that the magistrate told him he didn't need a lawyer. He concedes that his brother employed a lawyer and paid him a fee of about $100.00, Mr. Byron Kearby of Poplar Bluff, to represent him but he says that after the preliminary Mr. Kearby told him not to worry that "Two years is the most they can give you for possession and not knowing they (saddles) were stolen." He admits that at the preliminary the charges were explained to him as they were when his plea of guilty was entered. But he says that he wanted Mr. Kearby to subpoena certain witnesses and obtain a continuance. He says that on the day the case was set for trial he and Mr. Kearby appeared, a jury was present and finally when the case was called "The judge asked the lawyers, said, 'Mr. Lawyer, how do you enter this plea?' He said, 'Guilty,' and the judge said, 'Do you have anything to say before I sentence you?'" At this juncture Dickerson says, "I turned around and I pointed my finger at the two Becker brothers sitting back there and said I was sorry I went into that barn." Incidentally he testified that the barn was open at both ends, that there were no doors and hence he could not be guilty of burglary. But Mr. Becker said that there was a wooden gate, secured by a latch, "across the open area of the barn going into the barn where the saddles are." (See State v. Ewing, Mo., 298 S.W.2d 439, 443). As to his lawyer, Mr. Kearby, it was Dickerson's position that he was employed only to represent him on a plea of guilty and he told the court, to demonstrate ineffective counsel, that "Whenever he pled me guilty I was wanting a jury trial and the judge in turn didn't call the jury." He did say that Mr. Kearby "had a good reputation" and he conceded that Mr. Kearby did not advise him that he did not wish to try him

and he admitted that Mr. Kearby did not advise him to plead guilty.

■ But regardless of what the appellant testified to or claimed—it is assumed that his testimony in some degree supported his charges in this proceeding, the state adduced cogent and convincing testimony directly contradictory of every claim made. A sheriff, sheriff's deputies and highway patrol officers testified to the circumstances in which Dickerson was arrested, his brother's premises searched and his preliminary hearing held. Patrolmen testified that he was fully advised of all rights, his right to counsel and to silence. But most importantly Mr. Kearby testified that he was retained by Dickerson's brother, that while he was paid less than $100.00, he talked to appellant two or three times and got the case in circuit court reset. Mr. Kearby told the appellant that it would cost more than he had been paid to try the case, he advised him of the range of punishment, the effect of his prior felony record and he said, "I told him there was a possibility that we could try the case and win the burglary charge and be stuck for stealing and he could get as low as two years." Mr. Kearby repeatedly said, "I was prepared to go to trial" and "I had several witnesses subpoenaed." Mr. Kearby likewise advised the appellant's brother of all these facts and circumstances but he said "he (appellant) decided to go ahead and dispose of the case here" and after a conference in the judge's chambers, the appellant, his lawyer and the prosecuting attorney all present "he said he would plead guilty to burglary and they would let the sentence for larceny run concurrently with the ten years." On cross-examination Mr. Kearby, now a magistrate-probate judge, said that as they all stood at the bar before the court "Mr. Dickerson wanted to withdraw his plea of not guilty and enter a plea of guilty. Judge McGhee asked him, specifically, if he wanted to plead guilty and he said he did." Thus the proof refuted any possible claim of coerced plea of guilty or claimed invasion of constitutional or other legal rights.

■ And upon this record and proof the court made a detailed, seriatim finding of fact and concomitant conclusions of law, including a finding of the burglary of the Beckers' barn and the theft of two saddles of a value in excess of $50.00. In these circumstances and upon this record not only did the appellant Dickerson fail in sustaining his burden of proof the court's findings of fact and conclusions of law, and particularly the finding of a plea of guilty voluntarily and understandably entered, are supported by almost overwhelming proof and, needless to say, there is no place here for the invocation of the great cases and principles. In one or more respects this case and record are governed and controlled by the following select list of cases: McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Crosswhite v. State, Mo., 426 S.W.2d 67; State v. Stidham, Mo., 449 S.W.2d 634; State v. Brown, Mo., 449 S.W.2d 664; State v. Mountjoy, Mo., 420 S.W.2d 316; State v. Blackstone, Mo., 456 S.W.2d 323; Turley v. State, Mo., 439 S.W.2d 521, 526. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.