**STATE of Missouri, Respondent,**

v.

**Kenneth S. PETERSON, Appellant.**

**No. 28295.**

Missouri Court of Appeals, Kansas City District.

Nov. 4, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A jury in the Jackson County Circuit Court found Kenneth S. Peterson guilty of robbery in the first degree with a deadly weapon. The jury could not agree upon punishment and the court fixed the sentence at 50 years' imprisonment. The defendant appeals from the ensuing judgment.

Shortly before noon on November 29, 1974, three black males entered the Altman

Jewelry Store, located on 11th Street between Main and Walnut in Kansas City. They announced a holdup. One of them, subsequently identified by an Altman employee as appellant Kenneth S. Peterson, was carrying a revolver with which he smashed a display case containing diamonds. He removed rings and other items from the case and the three left the store.

A man going to lunch had seen a green Cadillac stop at 11th and Walnut. Three black men got out of the auto and a woman drove it away. He next saw the men in Altman's and saw that a holdup was in progress and called police. Another man with the first man saw the three blacks leave Altman's and go toward Macy's on Main Street.

A customer in Macy's saw a black man running through Macy's. He dropped two or three rings which were found to have come from Altman's. A Macy employee saw a young black man come out of the Macy Baltimore entrance and get into a green Cadillac double parked on Baltimore near 11th Street. He saw a second Negro male carrying a paper sack that appeared to contain a riser used in jewelry display cases. This man also got into the Cadillac. A third black man, running from the loading dock area of Macy's on Baltimore, was almost struck by the driver of an automobile.

Patrolman Raymen Kerfoot of the Kansas City Police Department was on traffic patrol duty in downtown Kansas City. At approximately 11:50 A.M. he heard the police dispatcher radio call of a holdup in progress at Altman's. The call said that three black males in a green Cadillac were involved and that the vehicle might be in the vicinity of 10th and 11th and Baltimore. Kerfoot went to 10th and Baltimore and saw a green Cadillac parked at around 1009 Baltimore. He saw three persons in the car as he approached. One got out and ran south on Baltimore. Kerfoot ordered the occupants out of the auto. When he did so a shot was fired from the vehicle, striking Kerfoot. The vehicle then left.

A man on his way to lunch had seen Kerfoot approach the Cadillac. He said Kerfoot sort of stuck his head in the car, started to draw his service revolver, and then "was literally blown right up against this wall." The man noted the license number of the Cadillac and reported it to police. Police found that the license had been issued for a Cadillac owned by appellant.

On December 15, 1974, a green Cadillac bearing the license number and owned by appellant was discovered by police at 1424 Armour Road, North Kansas City. The vehicle was taken to police headquarters and searched. Among items found in the automobile were two rings identified as having been taken from Altman's. Analysis of sweepings from the car showed the presence of glass fragments which matched the glass of the counter top at Altman's broken in the robbery.

On his trial, appellant denied participating in the robbery and offered alibi evidence. He also produced evidence that he had left his Cadillac at a service station at around 10:00 A.M. the day of the robbery and that the owner of the station had noticed around 2:00 P.M. that the auto was missing and reported to police that it had been stolen.

On this appeal the sole contention of appellant is that evidence presented by the state of the assault upon Officer Kerfoot was erroneously admitted because it constituted proof of another offense, was irrelevant to the charge against appellant, and was highly prejudicial.

The prosecutor did refer to the Kerfoot shooting in his opening statement and closing argument. Officer Kerfoot testified to it. The bystander who reported the license number to the police also testified to his observation. Two women in the auto which almost struck the black man near Macy's saw the shooting and testified to it. An officer who came to Kerfoot's assistance testified to seeing him lying in the street after he had been shot.

All of this evidence was admitted over appellant's objection that it constituted evidence of another offense. In this court he argues that the evidence dealing with the

assault upon Kerfoot did not tend to establish that he participated in the robbery and therefore it was error to have admitted it. Appellant acknowledges that evidence of the commission of a crime separate and distinct from that for which a defendant is on trial is not for that reason inadmissible when it has a legitimate tendency to establish the guilt of the defendant of the charge for which he is being tried. *State v. Garner*, 530 S.W.2d 420, 423[5] (Mo.App. 1975). His charge of error is based upon the erroneous assumption that the evidence of the assault upon Kerfoot did not link appellant to the robbery.

As appellant contends, none of the persons who testified to the assault upon Kerfoot could identify the assailant. None identified appellant as being with the assailant or in the Cadillac. However, the circumstances above recited, shown by the state's evidence, were sufficient to link the green Cadillac at which the officer was shot to the robbery. When the ownership of the vehicle was then traced to appellant, the evidence bolstered the identification testimony of the one eyewitness who identified appellant from having seen him at the jewelry store. If the evidence logically supported the state's theory of guilt, the fact that it incidentally showed another offense is no reason for its exclusion. Being relevant, no objection can be based upon a claim that the evidence was prejudicial. The state was not required to "nicely sift and separate the evidence" of another offense but had the right to show the facts of the continuous occurrence inextricably linked with the robbery for which appellant was on trial. *State v. Mangercino*, 325 Mo. 794, 30 S.W.2d 763, 765[5] (1930); *State v. Childers*, 313 S.W.2d 728, 733[10] (Mo.1958); *State v. Jasper*, 521 S.W.2d 182, 183–184[1] (Mo.App.1975). Those cases and the rule there applied control this case rather than cases such as *State v. Holbert*, 416 S.W.2d 129 (Mo.1967) and *State v. Lee*, 486 S.W.2d 412 (Mo.1972), cited by appellant. In those cases the evidence involving other offenses did not logically aid in proof of the charge on trial and its admission was held error. As has been demonstrated, the evidence here objected to was part of a chain of continuous circumstances, linking appellant to the robbery. Such fact also distinguishes this case from that of *State v. Williams*, 543 S.W.2d 563 (Mo.App.1976), decided concurrently with this case.

Judgment affirmed.

All concur.